**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**MARSHA M. EWING-CARODINE,**
**DEBRA F. HARDEN-HUBBARD, and**
**FANNIE M. VAUGHT,**

      **Plaintiffs,**

**vs.**                           **No. _____**
                                     **JURY DEMANDED**

**SHELBY COUNTY SCHOOLS,**
**a Public School District,**
**Formerly Known as**
**MEMPHIS CITY SCHOOLS,**

      **Defendant.**

---

**COMPLAINT**

---

Come now the three Plaintiffs, Marsha M. Ewing-Carodine, Debra F. Harden-Hubbard, and Fannie M. Vaught, by and through their attorneys, Maureen T. Holland and Kathleen L. Caldwell, and for their separate causes of action against the Defendant, state as follows:

## I. INTRODUCTION

1.    This action is brought pursuant to the Civil Rights Act of 1964, 42 U.S.C § 2000(e) as amended, to address unlawful employment practices on the basis of sex, and retaliation, and in violation of the Equal Pay Act, 29 U.S.C. § 206(d), et seq, as amended by the Lillie Ledbetter Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009), as to

Plaintiffs Marsha M. Ewing-Carodine, Debra F. Harden-Hubbard, and Fannie Vaught.

2.     This action is brought against the Plaintiffs' employer, Memphis City Schools, now doing business as Shelby County Schools.

## II.  JURISDICTION AND VENUE

3.     Jurisdiction is conferred on this Court under the provisions of Title VII, 42 U.S.C. § 2000e-5(f)(3), and pursuant to 28 U.S.C. §§ 1331 and 1343.

4.     Venue is appropriate in this district inasmuch as Defendant Shelby County Schools is subject to personal jurisdiction in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c).

## III.  ADMINISTRATIVE EXHAUSTION

5.     Plaintiff Marsha M. Ewing-Carodine filed a Charge of Discrimination (No. 490-2010-01914) with the Equal Employment Opportunity Commission ("EEOC") on June 7, 2010.  A true and correct copy of said charge is attached hereto as Exhibit "A" and incorporated herein by reference.  Said charge was timely filed, within 300 days of the events complained of.

6.     A Notice of Right to Sue for said charge was issued by the U.S. Department of Justice on or about April 25, 2013, which was received by Plaintiff Ewing-Carodine on or about April 30, 2013.  A true

and correct copy of said Notice of Right to Sue is attached hereto as Exhibit "B" and incorporated herein by reference.

7.     Plaintiff Debra F. Harden-Hubbard filed a Charge of Discrimination (No. 490-2010-01913) with the Equal Employment Opportunity Commission ("EEOC") on June 7, 2010.  A true and correct copy of said charge is attached hereto as Exhibit "C" and incorporated herein by reference.  Said charge was timely filed, within 300 days of the events complained of.

8.     A Notice of Right to Sue for said charge was issued by the U.S. Department of Justice on or about April 25, 2013, which was received by Plaintiff Harden-Hubbard on or about April 30, 2013.  A true and correct copy of said Notice of Right to Sue is attached hereto as Exhibit "D" and incorporated herein by reference.

9.     Plaintiff Fannie M. Vaught filed a Charge of Discrimination (No. 490-2010-01813) with the Equal Employment Opportunity Commission ("EEOC") on June 7, 2010.  A true and correct copy of said charge is attached hereto as Exhibit "E" and incorporated herein by reference.  Said charge was timely filed, within 300 days of the events complained of.

10.     A Notice of Right to Sue for said charge was issued by the U.S. Department of Justice on or about April 25, 2013, which was received by Plaintiff Vaught on or about April 30, 2013.  A true and

correct copy of said Notice of Right to Sue is attached hereto as Exhibit "F" and incorporated herein by reference.

11. All three Plaintiffs have thus exhausted their administrative remedies.

12. This Complaint is timely filed.

## IV. PARTIES

13. Plaintiff Marsha M. Ewing-Carodine (hereinafter "Carodine") is a female adult citizen of the United States.

14. Plaintiff Debra F. Harden-Hubbard (hereinafter "Harden-Hubbard") is a female adult citizen of the United States.

15. Plaintiff Fannie M. Vaught (hereinafter "Vaught") is a female adult citizen of the United States.

16. The Defendant employer at all times relevant and during the charging process was Memphis City Schools, a school district owning and operating the metropolitan school system within the City of Memphis, Tennessee. Effective on or about July 1, 2013, said Memphis City Schools merged or was caused to merge with the Shelby County School system, into a new entity denominated Shelby County Schools (hereinafter "SCS"). Plaintiffs therefore bring this action against SCS, the proper successor to Memphis City Schools. Said school district is an "employer" as defined by the relevant statutes, and is the proper named Defendant in this action.

## V. FACTS

4

17.     Plaintiffs repeat and re-allege by reference each and every allegation contained in Paragraphs 1 to 16, and incorporate same as if fully set out herein.

18.     Plaintiff Carodine has been employed by SCS or its predecessor since 2001.  Plaintiff Hubbard has been employed by SCS or its predecessor since 1998.  Plaintiff Vaught has been employed by SCS or its predecessor since October, 1982.

19.     On or about March 13, 2009, Plaintiffs Carodine and Hubbard engaged in protected activity, namely each filed an internal EEO, alleging unequal wages, age, and sex discrimination.

20.     Plaintiff Vaught on or about September 3, 2009, filed an internal EEO complaint (a protected activity) against Willie Slate, alleging age discrimination, and unequal wages being paid to male employees. She thereafter filed an EEOC charge with the EEOC on January 22, 2010 (also a protected activity).

21.     On or about May 24, 2010, Plaintiffs Carodine and Hubbard were informed that their respective positions of Program Project Specialist were being eliminated as of June 30, 2010.

22.     On or about May 24, 2010, Vaught was informed that her position of Data Processing Clerk was being eliminated as of June 30, 2010.

23.     In January 2010, SCS had hired two male employees into positions, to perform duties customarily performed by Program Project

Specialists, and the Data Processing Clerk position. Said male employees had no greater relevant background, education, and training than Plaintiffs, and they had no relevant work experience. Yet they were hired in at a higher rate of pay than the rate of pay enjoyed by Plaintiffs. Their positions were never posted, and were supposed to be temporary. But when Plaintiffs Carodine, Hubbard and Vaught were terminated, the two male employees were not terminated, and their temporary jobs became permanent.

24.     From the moment that Plaintiffs filed their internal complaint of discrimination, they found themselves being ridiculed, harassed and retaliated against. The onset of retaliation was immediate. Said retaliation has been both severe and pervasive, to-wit:

(a)     The day following Carodine's and Hubbard's EEO complaints, Supervisor Michael Toney stated that Carodine was going to lose her job. Toney was at all relevant times a supervisor working under Willie E. Slate.

(b)     Within ten (10) days of Carodine and Hubbard's protected activities, Willie E. Slate, Executive Director of Careers Technology and Adult Education, (and their supervisor's supervisor) requested Carodine and Hubbard to meet with her. At the meeting, on March 23, 2009, Slate asked them if they had issued a grievance against her. Slate asked them not to discuss their internal EEO complaint against her with any of the staff. Her actions were intimidating. She indicated that "people will be

mad at you." She directly stated that she could, with a stroke of the pen, take their jobs away. Carodine and Hubbard considered said statements to be threatening and intimidating. She attacked their character.

(c)      Following said meeting, Slate began a campaign of harassment. She intentionally created a hostile work environment for Carodine and Hubbard. Slate herself informed staff members of the internal EEO complaints. Rumors began circulating, including that Carodine and Hubbard would be fired. Slate also circulated rumors that Carodine and Hubbard were talking negatively about two of their co-workers. Said statements were false.

(d)      On April 1, 2009, Carodine was informed by Supervisor Dr. Carol Peterson that per Slate she could not attend a DECA Conference in Anaheim, California, although she had been cleared to go on the work-related trip. Other employees were allowed to go on a later trip, and none of them had engaged in EEO-protected activities.

(e)      Carodine and Hubbard complained to Dr. Roderick Richmond of the ensuing retaliation and the overt hostile work environment, but Dr. Richmond made no response.

(f)      Carodine and Hubbard continued informing Ms. Branch (SCS' Labor Relations office) of the repeated and offensive acts of harassment and retaliation, to no avail.

(g)      On April 15, 2009, Carodine learned of other employees who had been approved to attend the work-related conference in California.

(h)     On June 9, 2009, Hubbard learned she had been taken off Fund 1 MCS Hard Money and placed on a grant, without being informed of the change.   This action was a direct result of her internal EEO complaint.   A grant-funded position was a year-to-year position, subject to grant money availability.   Therefore such a position was much less desirable to the employee.

(i)     Hubbard tried to get help when her job duties were removed from her.   She went to her immediate supervisor, Lynda Cathey, Financial Analyst.   At one meeting with Cathey, Willie Slate was present; Slate turned to Hubbard and accused her of giving out information to other employees.   She was extremely angry and threatening.   She promised to tell all the supervisors of Hubbard's bad deeds, none of which were true.   Cathey did not stand up for Hubbard.   She knew or should have known that Slate was retaliating against Hubbard on account of her internal EEO complaint.

(j)     On June 15, 2009, Carodine and Hubbard were given letters that their "interim" positions would end June 30, 2009.   Their positions would be posted around June 23, 2009.

(k)     On July 1, 2009, Willie Slate requested that Dr. Peterson re-do Carodine evaluation, claiming that "no one should get 5's on their evaluation."   A 5 was the highest score possible.   Dr. Peterson, complied, and lowered Carodine's evaluation.

8

(l)     On July 8, 2009, Carodine and Hubbard met with Ms. Scales (EEO) and Mrs. Branch (Labor Relations) to discuss their concerns regarding retaliation.  They were informed that the complete report of retaliation would be given to Von Goodloe, Associate Superintendent. Plaintiffs objected, because Mr. Goodloe was part of the retaliation.  The response given by Scales and Branch was:  "He's our boss."

(m)     During July 2009, Carodine and Hubbard were required to be trained in E-Procurement, a new purchasing system.  The school district required the training, and informed the pertinent employees that it would no longer process paper requisitions.  But Slate would not allow Carodine or Hubbard to use the E-Procurement system, unlike the other employees.  This action interfered with their abilities to perform their work.

(n)     Throughout the summer of 2009, Carodine and Hubbard continued to endure rudeness, and acts of harassment from supervisors such as Slate and from co-employees, on account of their protected activities.  They were increasingly isolated.  They were unable to carry out their job duties with efficiency and accuracy due to the constant harassment.

(o)     As a result of the escalating hostile environment/retaliation, Carodine and Hubbard kept trying to get help from upper management, such as Dr. Hall.  They were largely ignored, and were told additional time was needed, but the retaliation continued.  They were encouraged to

move to other positions, but no positions were opened up for them.  SCS had the responsibility to find them comparable positions.

(p)     By August 7, 2009, Carodine and Hubbard were aware that the investigation was not being conducted correctly, that not all of their allegations were being addressed.  They were given the excuse that there was not enough money in the budget for the trip to California, when in actuality others with less direct involvement in the convention activities were allowed to go.

(q)     By August 18, 2009, Mr. Goodloe told Plaintiffs he needed two weeks before "he could even begin" investigating.

(r)     Plaintiffs thereafter again sought the assistance of Superintendent Cash and school board members, to no avail.

(s)     By the end of August, the school district had hired a purportedly impartial investigator, Jay Ebelhar, a local attorney.  He conducted a perfunctory investigation.

(t)     At a meeting on September 3, 2009, Plaintiffs met with Mr. Ebelhar who asked them if Slate had offended other employees.  They disclosed to him the name of Fannie Vaught.  Vaught had applied for two promotional positions (Date Processing Clerk III and Program Project Specialist) in June 2009, but had been ignored.  The successful candidates were temporary employees, less-qualified than Vaught.  She then filed her internal EEO complaint that same day.

(u)     On September 17, 2009, Hubbard informed Ebelhar that she was being further retaliated against by Slate, who was changing/eliminating her job duties on account of her EEO activities.

(v)     In early October 2009, Slate hired new employees to work with the WIN program.  They were to perform job duties which were normally assigned to Program Project Specialists, such as Carodine and Hubbard.  But their job titles were "Part-Time Teachers," and they were to receive higher pay than Carodine and Hubbard.

(w)     On November 23, 2009, the "results" of Ebelhar's investigation were purportedly sent by SCS to Carodine, Hubbard and Vaught.  Said report totally ignored the complaints of retaliation, but acknowledged that Plaintiffs' job evaluations were "missing."  SCS at all relevant times has had in place policies and practices which required that personnel files be maintained for each employee, and were supposed to include annual performance evaluations.  Ebelhar's actual findings were not made available to Plaintiffs.

(x)     Plaintiffs thereafter requested to see the full investigative report of Jay Ebelhar, but were denied access.

(y)     In house Chief Counsel, Dorsey Hopson, sent letters to the Plaintiffs, suggesting that they seek re-assignment, to get them out of the hostile work environment.  Plaintiffs responded with requests for transfer to lateral positions, and other general inquiries.  There were no meaningful responses from SCS.

11

(z)     Mr. Hopson had further represented to Carodine and Hubbard that they would receive "compensation," but the payment was repeatedly delayed.   Ms. Branch from Labor Relations, in an act of outright retaliation, told Plaintiffs the compensation had not been paid because they had continued with their EEO complaints.

(aa)    On or about January 4, 2010, upon returning from Christmas break, Plaintiffs observed that Slate had hired an employee to work in the area, as a permanent employee.   Two other persons were hired in January 2010, as permanent employees.

(bb)    Throughout the winter and early spring, 2010, Plaintiffs were continually harassed and isolated from other employees.   Slate continued to intimidate and harass them.   Her subordinates did likewise.   As an example Carol Miller (principal at Messick Adult Education) would look for excuses to call Vaught late or tardy.   She was often sitting in Vaught's chair when Vaught returned from lunch.   Before Vaught's protected activity, Miller did not do such things.   Everyday there were incidents. The hostile environment pervaded the department where Plaintiffs worked, to such an extent that their abilities to perform their job responsibilities were negatively impacted.

(cc)    On May 28, 2010, Slate told Carodine, Hubbard, and Vaught to report to Labor Relations on the following Monday.   Thus on June 1, 2010, they were told by Mrs. Branch that their positions were being eliminated due to "budget cuts."   They were given separation packets.

However, the positions identified by SCS to the <u>Commercial Appeal</u> as being eliminated did not include the Plaintiffs' positions.  Later that same day Mrs. Branch met with Plaintiffs Carodine and Hubbard and informed them their positions had been eliminated.  Later they were told "surplused," a term directly contrary to the letters of termination received by Plaintiffs.

(dd)   The last official day of employment with SCS for Carodine and Hubbard was June 30, 2010.  Note:  Carodine has now been re-hired, as a Teacher.  Vaught's last day was June 28, 2010.  (She was later re-hired as a General Office Secretary for SCS).  The Plaintiffs' last checks were received on or after July 30, 2010, which is within three years of their filing the instant Complaint.  Plaintiffs' claims under the Equal Pay Act are therefore timely.   Plaintiffs therefore assert the following:

     1.     Different wages were paid to employees of the opposite sex.

     2.     The employees performed substantially equal work in jobs requiring equal skills, effort, and responsibility.

     3.     The jobs were performed under similar working conditions.

(ee)   Thus Slate did as she had threatened to do:  she wrote Carodine, Hubbard, and Vaught out of the budget for the department.  No one else was treated the same way.  None of the remaining employees

had engaged in protected activities.  Moreover, the two new hires, both of whom were males, and who were still temporary and who were earning much more than the Plaintiffs, were not eliminated.

(ff)    Earlier in June 2010, Slate hired several teachers (at least ten) to work during the summer on a program called "E-Tiger."  Carodine and Hubbard had previously performed job duties of training teachers updating student data, and updating teachers on the E-Tiger program. After Carodine and Hubbard filed their internal EEO complaints, they were denied access to meetings and the E-Tiger program.  The teachers' responsibilities during the summer 2010 included performance of many of the Plaintiffs' duties.

(gg)    After Hubbard filed her internal EEO complaint, Slate changed her duties, removing her from most of her responsibilities.  Slate never gave her other or alternate duties.  This situation directly caused great anxiety and distress to Hubbard.  Hubbard felt directly threatened. She was embarrassed at the loss of said duties.  The situation became so dire that Hubbard had great difficulty coming to work.

(hh)   The decision to eliminate Plaintiffs' positions was made by Slate.  She was the sole decision-maker.  SCS has taken the position that the reduction in force was to be carried out based upon seniority.  Yet the Plaintiffs had more seniority than the other individuals working in the same position.  Everyone except the Plaintiffs remained in their

positions, including those in temporary positions, and none of them had engaged in protected EEO activities.

25.     SCS, through its agents, representatives and employees, and especially their supervisors have intentionally, willfully and knowingly engaged in discrimination against Carodine, Hubbard, and Vaught, in violation of the Title VII, and in retaliation for their prior protected activities, including: failure of SCS to protect them from a hostile work environment, downgrading evaluations, false allegations, threats of further disciplinary actions, and denial of opportunities for further training and advancement of their professional careers.

26.     SCS, through its agents, representatives and employees, by the acts and conduct described above, and especially the   supervisors, have intentionally, willfully, knowingly and unlawfully engaged in unlawful discrimination, by subjecting Plaintiffs to an extreme, severe and pervasive hostile working environment, in violation of Title VII.

27.     The above-described harassment, based on retaliation has created an intimidating, oppressive, hostile and offensive work environment that unreasonably interferes with Plaintiffs' emotional and physical well-being and work performance.  Said hostile environment has been both severe and pervasive.

28.     Plaintiffs have reasonably perceived the work environment to be hostile and abusive on a daily basis – such as (but not limited to) not allowing Plaintiffs to access certain software, not providing equipment

needed to perform their jobs, disallowing them from visiting schools as required to perform their jobs, and disallowing travel to Anaheim, California, for a work-related conference. They were daily subjected to insults and ridicule. They were ignored and left out of meetings. They were taunted. Other staff members have been provided equipment to perform their duties, and to visit and travel as needed for their job. Plaintiffs have not been allowed to use the E-Procurement purchasing system, which directly impacted their abilities to perform their duties as Program Project Specialists.

29.   Carodine, Hubbard, and Vaught have become increasingly physically ill and emotionally upset over the work environment, the false accusations, and the attempts to undercut their work and to ruin their professional reputation.

30.   Carodine, Hubbard, and Vaught  have been under the care of doctors since the hostile environment began, regarding the emotional trauma and physical problems they have gone through and continue to go through as a direct result of the work environment.

31.   At all relevant times during the course of Plaintiffs' employment with the SCS, they have been excellent employees, who meet and exceed expectations.

32.   SCS failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future as well as to

prevent retaliation on the part of its managers, supervisors, and employees.

33.     As a direct and proximate result of the SCS' actions or omissions complained of herein, Carodine has suffered and continues to suffer embarrassment, humiliation, crying spells, physical and emotional pain and suffering, including anxiety, headaches, hair loss, weight gain, indigestion, back aches, sleep problems, depression, and isolation by peers, and her supervisors.

34.     In failing to protect Carodine from discrimination, intimidation and/or retaliation through acts of its employees and agents, SCS has abused its position as Carodine's employer.  SCS vested its Executive Director of Career and Technology and Adult Education, namely Willie Slate and her subordinates, Dr. Carol Peterson, Emma Garner, Albert Flowers and Michael Toney with substantial power to control Plaintiff's work environment, and has allowed them to injure Plaintiff, her interests and her physical and emotional well-being.

35.     SCS, through the agents named above, has retaliated against Plaintiff Carodine.   After her efforts to complain internally of discrimination, namely, Dr. Alfred Hall, the Chief of Staff, then to Chantay Branch Labor Relations, Plaintiff has worked under an increasingly hostile working environment, in violation of Title VII.   The unwarranted comments have increased, and the harassment by her

supervisor (Slate) escalated, culminating in Slate's termination of Carodine.

36.    As a direct and proximate result of the SCS' actions or omissions complained of herein, Hubbard has suffered and continues to suffer embarrassment, humiliation, physical and emotional pain and suffering, including crying spells, anxiety, mental anguish, depression, high blood pressure, weight gain, sleep problems, and isolation by peers, and her supervisors.

37.    In failing to protect Hubbard from discrimination, intimidation and/or retaliation through acts of its employees and agents, SCS has abused its position as Hubbard's employer.  SCS vested its Executive Director of Career and Technology and Adult Education, namely Willie Slate and her subordinates, Lynda Cathey, with substantial power to control Plaintiff's work environment, and has allowed them to injure Plaintiff, her interests and her physical and emotional well-being.

38.    SCS, through the agents named above, has retaliated against Plaintiff Hubbard.  After her efforts to complain internally of discrimination, namely, Dr. Alfred Hall, the Chief of Staff, then to Chantey Branch (Labor Relations), Plaintiff has worked under an increasingly hostile working environment, in violation of Title VII.  The unwarranted comments have increased, and the harassment by her

supervisor (Slate) escalated, culminating in Slate's termination of Hubbard.

39.    As a direct and proximate result of the SCS' actions or omissions complained of herein, Vaught has suffered and continues to suffer embarrassment, humiliation, physical and emotional pain and suffering, including panic attacks, anxiety, crying spells, mental anguish, depression, ulcers, high blood pressure, chest pain, weight gain, increase in blood sugar, sleep problems, and isolation by peers, and her supervisors.

40.    In failing to protect Vaught from discrimination, intimidation and/or retaliation through acts of its employees and agents, SCS has abused its position as Vaught's employer.   SCS vested its Executive Director of Career and Technology and Adult Education, namely Willie Slate and her subordinates, such as Carol Miller and Matthew Sharp, with substantial power to control Plaintiff's work environment, and has allowed them to injure Plaintiff, her interests and her physical and emotional well-being.

41.    SCS, through the agents named above, has retaliated against Plaintiff Vaught.    After her efforts to complain internally of discrimination, namely, Dr. Alfred Hall, the Chief of Staff, then to Chantay Branch (Labor Relations), Plaintiff has worked under an increasingly hostile working environment, in violation of Title VII.   The unwarranted comments have increased, and the harassment by her

supervisor (Slate) escalated, culminating in Slate's termination of Vaught.

## VI. **PRAYER OF RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray for the following relief:

Plaintiffs Carodine, Hubbard, and Vaught demand:

A.     Judgment be entered declaring that the actions of SCS by and through its servants, agents and employees are in violation of Title VII of the Civil Rights Act of 1964 as amended;

B.     Injunctive relief prohibiting Defendant from further harassment and retaliation;

C.     Judgment against Defendant for all equitable relief, including back pay, front pay, reinstatement, benefits, retirement and all other relief as may be appropriate under the Act;

D.     Judgment against Defendant in favor of each Plaintiff for all compensatory damages up to and including Three Hundred Thousand ($300,000.00) Dollars;

E.     Award of all damages available to each Plaintiff for Defendant's violation of The Equal Pay Act, including any liquidated damages.  The actions of Defendant were willful and intentional;

F.     Award of costs, attorney's fees and expenses incurred, together with pre-judgment interest;

G.     Such other relief as the Court determines just under the law to make these Plaintiffs whole or as appropriate to effectuate the remedial purposes of the Act; and

H.     Jury trial is demanded.

Respectfully submitted,

HOLLAND & ASSOCIATES, PLLC

_s/ Maureen T. Holland, #15202_
Maureen T. Holland
Attorney for Plaintiff
1429 Madison Avenue
Memphis, Tennessee 38104
Telephone:   (901) 278-8120
Facsimile:   (901) 278-8125

KATHLEEN CALDWELL, PLLC

_s/ Kathleen L. Caldwell, #9916_
Kathleen L. Caldwell
Attorney for Plaintiff
2670 Union Ave. Ext., Suite 110
Memphis, TN 38112
Telephone:   (901) 458-4035
Facsimile:   (901) 458-4037