# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| MARSHA M. EWING-CARODINE, ) | |
| DEBRA F. HARDEN-HUBBARD, and ) | |
| FANNIE M. VAUGHT ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13-2560-STA-dkv |
| ) | |
| SHELBY COUNTY SCHOOLS, ) | |
| a public school district, f/k/a ) | |
| MEMPHIS CITY SCHOOLS ) | |
| ) | |
| Defendants. ) | |

## ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DIRECTING PLAINTIFFS TO SUBMIT SUPPLEMENTAL BRIEF

Before the Court is the Plaintiffs' Motion for Partial Summary Judgment filed November 14, 2014. (ECF No. 29). The Defendant filed a Response in Opposition to the Motion on December 12, 2014, as well as a statement of additional facts. (ECF No. 45). The Plaintiffs have not filed a Reply to the Defendant's Response. Under the Local Rules for this District, the Plaintiffs had 14 days after the Response was served to file their Reply. L.R. 56(c). The Local Rules state that "[f]ailure to respond to . . . a non-moving party's statement of additional facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment." L.R. 56(d). Therefore, for the purposes of the Motion before the Court, the Defendant's additional facts are not disputed.

1

## BACKGROUND

Plaintiffs Marsha Ewing-Carodine, Debra Harden-Hubbard, and Fannie Vaught are former or current employees of Shelby County Schools:[1] Ms. Ewing-Carodine from 2001 until 2010; Ms. Harden-Hubbard from 1998 until 2010; and Ms. Vaught from 1982 until present. (Pls.' Facts ¶ 1, ECF No. 45-1). They allege that the Defendant engaged in unlawful employment practices under Title VII, 42 U.S.C. § 2000e, on the basis of race and retaliation and that Defendants have violated the Equal Pay Act, 29 U.S.C. § 206(d). The Plaintiffs now seek summary judgment on their retaliation claim.

### I. Ewing-Carodine and Harden-Hubbard

On March 13, 2009, Ewing-Carodine, Harden-Hubbard, and non-party Ms. Sunnell Williams submitted an internal complaint to Memphis City Schools ("MCS") Chief of Staff Dr. Alfred Hall. (Def.'s Facts ¶ 5, ECF No. 45-2).[2] In the internal complaint, Ewing-Carodine, Harden-Hubbard, and Williams informed Dr. Hall of "unfair hiring practices and unequal pay" that they allegedly endured at the hands of Ms. Willie Slate, Executive Director of Careers, Technology and Adult Education ("CTAE"). (Pls.' Facts ¶ 2, ECF No. 33-2). The March 13, 2009 internal complaint alleges no discrimination under Title VII. It informs MCS that certain job-posting requirements and pay-scale policies were not being followed, with no mention of prohibited discrimination. Furthermore, Vaught is not mentioned in the document and is not a signatory to the document.

---

[1] Memphis City Schools ("MCS") and Shelby County Schools ("SCS") merged on July 1, 2013. The newly combined school district took the name Shelby County Schools.

[2] The Plaintiffs state that they "filed an internal Equal Employment Opportunity complaint." But the letter to Dr. Hall is not a formal EEO Complaint. It is a letter expressing policy grievances, described further below.

Shortly after writing and sending the internal complaint, Slate met with Ewing-Carodine and Harden-Hubbard, but the parties dispute the substance of conversation at that meeting. (*See* Pls.' Facts ¶¶ 3–5; Def.'s Responses ¶¶ 3–5, ECF No. 45-1). Ewing-Carodine and Harden Hubbard allege that they then "began to experience changes in the workplace" and heard rumors that they would be fired. (Pls.' Facts ¶ 6–7). In April 2009, Slate denied Ewing-Carodine's request to attend a conference in Anaheim, California. (*Id.* ¶ 8–9). On June 15, 2009, Ewing-Carodine and Harden-Hubbard received letters stating that their interim positions would end on June 30, 2009. (*Id.* ¶ 17). The Defendant asserts that Ewing-Carodine and Harden-Hubbard's positions were at all times "interim." Thus, when MCS lifted a hiring freeze, Slate could post the interim positions as permanent positions, and Ewing-Carodine and Harden-Hubbard would have an opportunity to apply for the positions on a permanent basis or be placed elsewhere within MCS. (Def.'s Responses ¶ 19).

By this time, Dr. Hall had referred the internal complaint to MCS's Department of Labor Relations and Equity Compliance for investigation. (Def.'s Facts ¶ 6). Labor Relations Coordinator Chantay Branch and Equity Compliance Specialist Andrea Scales investigated the complaint. (*Id.*). On August 6, 2009, HR employees Branch and Scales presented their written findings to Dr. Hall regarding the internal complaint. Their findings did not support the allegations made by the complainants, but they still recommended that Ewing-Carodine and Harden-Hubbard receive their positions on a permanent basis and that Harden-Hubbard receive a step increase in pay grade. (Def.'s Facts ¶ 7–8). The three complainants—one of whom is not a party to this action—then sent Superintendent Kriner Cash a letter complaining about that investigation. (*Id.* ¶ 9–10). MCS responded by hiring a local attorney to conduct an independent investigation; he uncovered no evidence of retaliation. (*Id.* ¶ 11). The next year, MCS notified

Slate that it would reduce CTAE's budget by $1.6 million, and Ewing-Carodine and Harden-Hubbard were told that their positions were being eliminated from the CTAE budget. (*Id.* ¶ 13). The Defendant asserts that Slate eliminated 17 of the 36 positions funded by the same grant that funded Ewing-Carodine and Harden-Hubbard's positions. (*Id.* ¶ 15). Ewing-Carodine and Harden-Hubbard had held their respective positions for less time than others, and therefore, their positions were terminated. (*Id.*). They filed identical EEOC charges of discrimination on June 7, 2010. (Pls.' Compl. ¶ 5–9). At this point, they alleged discrimination based on "sex," "retaliation," and "other: equal pay." (Exs. A, C to Pls.' Compl., ECF No. 1-2).

## II. Vaught

The Plaintiffs summarily state that "Vaught, on or about September 3, 2009, de facto joined Carodine and Hubbard's internal complaint against Slate alleging violations of unfair hiring practices and unequal pay." (Pls.' Mem. in Supp. 5). The Plaintiffs do not explain how Vaught "de facto joined" the internal complaint. Instead, they state that Vaught had applied for two separate promotional positions at MCS, believed she was wrongfully denied, and believed that "those who received the positions were either men or friends and/or family members of Slate's." (*Id.*). After "joining" the internal complaint, Vaught alleges that she began to suffer "total isolation by her coworkers and a decrease in job responsibilities and unwarranted and increased scrutiny of her job performance." (*Id.* at 6). Although the Plaintiffs have not presented the document, in Vaught's June 7, 2010 EEOC charge of discrimination, she states that she "filed an external complaint with the EEOC on January 26, 2010 alleging age discrimination." (Ex. E to Pls.' Compl., ECF No. 1-2). In her June 7, 2010 charge of discrimination, she marks the boxes "sex," "retaliation," and "other: equal pay," but she also

4

states in a text box that she "and others have been discriminated against on the basis of our ages in [v]iolation of the Age Discrimination in Employment Act." (Ex. E to Pls.' Compl.).

**III. Retaliation Claims**

On July 24, 2013, the Plaintiffs filed their Complaint under "the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) as amended, to address unlawful employment practices on the basis of sex, and retaliation, and in violation of the Equal Pay Act, 29 U.S.C. ¶ 206(d), et seq., as amended by the Lillie Ledbetter Pay Act of 2009." (Pls.' Compl. ¶ 1). They now seek summary judgment only the issue of Title VII retaliation.[3] Ewing-Carodine and Harden-Hubbard "assert that they suffered retaliation after filing an internal complaint with SCS against their boss and former [CTAE] Director Willie Slate for unfair hiring practices and violations of the Equal Pay Act." (Mem. in Supp. Mot. Summ. J. 2, ECF No. 30-1). Vaught asserts that "she suffered ostracization by her coworkers and eventual job surplus leading to a lower-paying job with SCS in retaliation for joining in Carodine and Hubbard's complaints of SCS engaging in unfair hiring practices." (*Id.* at 2).

## **STANDARD**

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party,[5] and

---

[3] The Plaintiffs have not alleged a claim of retaliation under the ADEA.

[4] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

5

it "may not make credibility determinations or weigh the evidence."[6] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[7] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[8] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[9] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[10] In this Circuit, the nonmoving party must "put up or shut up" as to the critical issues of the claim.[11] The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[12]

## DISCUSSION

The Plaintiffs ask the Court to grant summary judgment on their retaliation claims, apparently under Title VII. The cases cited by the Plaintiffs in their Motion are all Title VII

---

[6] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

[7] *Celotex*, 477 U.S. at 324.

[8] *Matsushita*, 475 U.S. at 586.

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[10] *Id.* at 251–52.

[11] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[12] *Celotex*, 477 U.S. at 322.

cases.¹³ Although the Plaintiffs' Motion is unclear, they do state that "MCS (through Ms. Slate's actions) retaliated against the Plaintiffs' [sic] by eliminating their positions due to their having engaged in a protected activity."¹⁴

**I. Title VII Retaliation**

An employer violates 42 U.S.C. § 2000e-3(a) when it discriminates against an employee "because he has opposed any practice made unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."¹⁵ The first clause is the "opposition" clause, and the second is the "participation" clause.¹⁶ It appears that the Plaintiffs are alleging retaliation for opposing an unlawful employment practice. These "unlawful employment practices under Title VII include any actions taken on the basis of race, color, religion, sex, or national origin."¹⁷

The Plaintiffs rely on circumstantial evidence in an attempt to support an inference of retaliation. Thus, the Court applies the burden-shifting analysis set forth in the Supreme Court's opinions in *McDonnell Douglas* and *Burdine*.¹⁸ Under this framework, the Plaintiffs have the

---

¹³ The Plaintiffs' Complaint does not mention anything regarding the Age Discrimination in Employment Act. It alleges a violation of Title VII based on sex and retaliation, and a general violation of the Equal Pay Act. The Plaintiffs have briefed nothing regarding the Equal Pay Act.

¹⁴ Pls.' Mem. in Supp. 10.

¹⁵ 42 U.S.C. § 2000e-3(a).

¹⁶ *See Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271, 274 (2009).

¹⁷ *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 544 (6th Cir. 2008).

¹⁸ *Id.* at 544 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)).

7

initial burden of establishing a prima facie case of retaliation, which requires a showing that "(1) [they] engaged in protected activity, (2) this exercise of [their] protected civil rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff[s], and (4) there was a causal connection between the protected activity and the adverse employment action."[19]

## II. Ewing-Carodine and Harden-Hubbard

The Plaintiffs state that there is no dispute as the first three elements of the prima facie case. Nevertheless, the Defendant correctly points out that a genuine issue of facts exists as to "whether Hubbard and Carodine engaged in protected activity under Title VII."[20] These two Plaintiffs' sole assertion of protected activity is the March 13, 2009 letter to Dr. Hall. This document informs Dr. Hall "of the unfair hiring practices and unequal pay [Plaintiffs] have endured under the leadership of Wille E. Slate."[21] The letter makes several allegations, none of which include a charge of discrimination based on any Title VII protected class. First, the letter states that three temporary employees' positions were made permanent without any posting of their positions. Second, a fourth employee held the title of Part-Time Teacher but received the same benefits as full-time employees. Ewing-Carodine and Harden-Hubbard alleged that this employee performed the same duties as clerks, rather than those performed by part-time teachers. Third, a fifth temporary employee continued to work past the date at which her services were supposed to cease. The fourth and fifth employees "were hired at a higher rate of pay than Mrs.

---

[19] *Id.* (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997)).

[20] Def.'s Response in Opp'n 6, ECF No. 45.

[21] *See* Internal Compl., Exs. 1–2 to Pl.'s Mot. Summ. J., ECF No. 33-3.

Ewing-Carodine, Mrs. Hubbard, and Mrs. Williams."[22] Ewing-Carodine and Harden-Hubbard then explain that

> [t]his was done in total disregard to our years of service, our positions within the division, our livelihood, and MCS Policy 5.116 Job Vacancies and Job Posting. . . .
> 
> Mrs. Ewing-Carodine and Mrs. Hubbard were offered the Program/Project Specialist positions as interim in November, 2007. They were told the positions will have to be posted before they will have an opportunity to fill them permanently. Mrs. Ewing-Carodine and Mrs. Hubbard do not understand how non-MCS employees can be hired permanently without the positions being posted. Our positions have remained interim for over a year.[23]

Ewing-Carodine and Harden-Hubbard suggest that their "number of years with CTAE, education, experience and [their] proven work should allow for [them] to have the first opportunity to advance within the division."[24] The cordial letter requests that a job-posting policy be honored in accordance with an MCS policy and states that "all three ladies feel they should be compensated at the level of the individuals that are paid at a higher rate of pay than themselves."[25]

The complaints have "nothing to do with [the Plaintiffs'] race, color, religion, sex or national origin."[26] There is no inference of alleged discrimination based on a Title VII protected

---

[22] *Id.* Mrs. Williams is a non-party to this lawsuit.

[23] *Id.*

[24] *Id.*

[25] *Id.* The Court notes that all five employees mentioned as receiving higher pay or retaining permanent positions without prior job-posting are all women.

[26] *Balazs v. Liebenthal*, 32 F.3d 151, 158–59 (4th Cir. 1994); *see Learned v. Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988) ("[T]he opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation."); *Spencer v. CSL Plasma, Inc.*, No. 10-00262, 2011 U.S. Dist. LEXIS 102846, at *13 (W.D. Ky. Sep. 12, 2011) ("That is, although

9

class, and the Plaintiffs have not put forth in their Motion any statement or evidence suggesting that they made any other complaints of employment practices prohibited by Title VII. Ewing-Carodine and Harden-Hubbard simply communicated to their employer a belief that the employer engaged in unfair practices. The letter shows no complaint of discrimination prohibited by Title VII. The Court even considered the inference that the phrase "unequal pay" suggests a claim of gender discrimination. But it is clear from the internal complaint that these two Plaintiffs were not complaining of discrimination based on gender. Indeed, all of the employees mentioned in the letter—those allegedly receiving higher pay or reaping the benefits of MCS's failure to post jobs—were female. The Plaintiffs requested that their jobs be made permanent and that they receive pay similar to those workers, nothing more.

### III. Vaught

The Plaintiffs have summarily suggested that "Plaintiff Vaught, on or about September 3, 2009, de facto joined Carodine and Hubbard's internal complaint against Slate alleging violations of unfair hiring practices and unequal pay. . . . [Vaught] believes she was wrongfully denied those positions, and believes those who received the positions were either men or friends and/or family members of Slate's."[27] How Vaught could "de facto join" an internal complaint that she did not sign is unexplained. Vaught's June 7, 2010 charge of discrimination does state that she filed an external complaint with the EEOC alleging age discrimination soon after

---

Plaintiff's complaints relate to safety issues, his grievances identify no violation of law. Consequently, they cannot form the basis for a Title VII retaliation claim."); *see also Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (noting the appropriateness of looking to Title VII as a source of authority for interpreting the ADEA and finding that "[i]n order to receive protection under the ADEA, a plaintiff's expression of opposition must concern a violation of the ADEA.").

[27] Pls.' Mem. in Supp. 5.

September 3, 2009. First, neither age discrimination nor retaliation for opposing age-related discrimination is a ground listed in the Complaint to this action. Second, assuming that Vaught had made age-discrimination claims and assuming that Vaught filed a previous EEOC charge, Vaught testified at deposition that it was filed at an external EEOC office. The Plaintiffs have not alleged that anyone at MCS knew about this EEOC charge.

Title VII bars retaliation after a plaintiff has opposed any employer practice "made an unlawful employment practice by [Title VII]."[28] In sum, there is at least a genuine dispute of material fact as to whether the Plaintiffs engaged in any protected activity. Concerning to the Court, however, is that the Plaintiffs, thus far, have failed to put forth *any* facts showing that they engaged in protected activity under Title VII upon which the Defendant could have retaliated. General grievances about employer treatment with no references or inferences to Title VII discrimination do not qualify as protected activity under the statute. If they did not engage in protected activity, then they have no claim for retaliation under Title VII. Both parties have also incorrectly combined and confused the legal distinctions between general discrimination, retaliation, and hostile work-environment claims, as well as the different protections afforded by Title VII, the ADEA, and the Equal Pay Act.

## CONCLUSION

The Plaintiffs' Motion for Summary Judgment is **DENIED**. The Plaintiffs are **ORDERED** to submit a supplemental brief showing why the Court should not, sua sponte, grant summary judgment in favor of the Defendant on the issue of Title VII retaliation,[29] as the Plaintiffs, thus far, have set forth no facts suggesting that they engaged in protected activity. The

---

[28] 42 U.S.C. § 2000e-3(a).

[29] *See* Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a non-movant.").

11

Plaintiffs shall have 14 days from the entry of this order to submit their supplemental brief. The Court need not reach the Defendant's contentions on other elements of a prima facie case—adverse employment action and causal connection—or the proffered legitimate, non-discriminatory reason because the Plaintiffs have not yet alleged facts showing that they engaged in protected activity.

**IT IS SO ORDERED.**

                                                **s/ S. Thomas Anderson**
                                                S. THOMAS ANDERSON
                                                UNITED STATES DISTRICT JUDGE

                                                Date: January 5, 2015.